FILED
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 1 3 2012 ★

BROOKLYN OFFICE

IN CLERK'S OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

GRACE ADAMS,
          Plaintiff,

v.

MERS.
US BANK, NA,
JOHNATHAN ROSENTHAL,
CARMEN OIEN,
SPRING LEAF FINANCIAL SERVICES (formerly
     WILMINGTON FIANCE, a division of AIG Savings Bank

          Defendants.

_____ /

12CV4640 and 12CV4646

"Jury Trial Demanded"

## PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' FORECLOSURE ACTION, FOR DISCOVERY AND FOR RECISSION

1. Defendant US Bank, NA (US Bank) has failed to establish it was the holder of the Note, and that it possessed the Note, when it instituted a non-judicial foreclosure against Plaintiff on August 4, 2007. It did not possess the Note, on August 4, 2007, when it instituted a wrongful non-judicial foreclosure action against Plaintiff. The Defendants did not acquire what looks like a robo-signed assignment, until 1 year later, dated August 21, 2008, after the fact that Defendants violated Plaintiff's rights of rescission, therefore dismissing the current foreclosure proceedings against Plaintiff is proper. **Exhibits A and B.**

1. The promissory note is evidence of the primary mortgage obligation. The mortgage is only a mere incident to the note

2. The mortgage instrument is only the security for the indebtedness.

1

3. That the plaintiff bank lender in a foreclosure must prove it owns and holds the note at the time the foreclosure case is filed. "While it is true that standing to foreclose can be demonstrated by the filing of the original note with a special endorsement in favor of the plaintiff, *this does not alter the rule that a party's standing is determined at the time the lawsuit was filed*.

4. Stated another way, <u>the plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed. Thus, a party is not permitted to establish the right to maintain an action retroactively by acquiring standing to file a lawsuit after the fact.</u>

1. Access to courts requires an initial protective review of whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. This is what has traditionally been referred to as the question of standing to sue. Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends on whether the party has alleged a "personal stake in the outcome of the controversy." , quoting Sierra Club v. Morton, 405 U.S. 727, 731-732, 92 S.Ct. 1361, 31L.Ed.2d 636 (1972), quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1972).

2. Similarly, the United States Supreme Court observed in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), that "[s]tanding to sue is part of the common understanding of what it takes to make a justiciable case."

3. Standing is a "jurisdictional requirement" and it is an elementary concept of law that a party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action

4. Because standing to sue is required to invoke the jurisdiction of the circuit court, "standing is to be determined as of the commencement of suit." Lujan v. Defenders of Wildlife, 504 U.S. 555, 570-571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), fn. 5; see also Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154-1155 (10th

Cir.2005); Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1275 (11th Cir.2003); Perry v. Arlington Hts., 186 F.3d 826, 830 (7th Cir.1999); Carr v. Alta Verde Industries, Inc., 931 F.2d 1055, 1061 (5th Cir.1991).

5. In order to preserve the constitutional right of access to courts granted by the Florida Constitution, invoking the jurisdiction of the court "depends on the state of things at the time of the action brought," Mullan v. Torrance, 22 U.S. 537, 539, 6 L.Ed. 154 (1824), and the Supreme Court has observed that "[t]he state of things and the originally alleged state of things are not synonymous; demonstration that the original allegations were false will defeat jurisdiction." Rockwell Internatl. Corp. v. United States, 549 U.S. 457, 473, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007).

6. "Post-filing events that supply standing that did not exist on filing may be disregarded, denying standing despite a showing of sufficient present injury caused by the challenged acts and capable of judicial redress." 13A Wright, Miller & Cooper, Federal Practice and Procedure 9, Section 3531 (2008); see Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 575, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004), quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 75, 117 S.Ct. 467, 136 L.Ed.2d 437 (rejecting argument that " 'finality, efficiency, and judicial economy' " can justify suspension of the time-of-filing rule); Utah Assn. of Counties v. Bush, 455 F.3d 1094, 1101, and fn. 6 (10th Cir.2006) (a plaintiff cannot rely on injuries occurring after the filing of the complaint to establish standing).

7. This principle accords with decisions from other states holding that standing is determined as of the filing the complaint. See, e.g., Deutsche BankNatl. Trust v. Brumbaugh, 2012 OK 3, 270 P.3d 151, ¶ 11 ("If Deutsche Bank became a person entitled to enforce the note as either a holder or nonholder in possession who has the rights of a holder after the foreclosure action was filed, then the case may be dismissed without prejudice * * *" [emphasis added]); U.S. Bank Natl. Assn. v. Kimball, 190 Vt. 210, 2011 VT 81, 27 A.3d 1087, ¶ 14 ("U.S. Bank was required to show that at the time the complaint was filed it possessed the original note either made payable to bearer with a blank endorsement or made payable to order with an endorsement specifically to U.S. Bank" [emphasis added]); Mtge. Electronic Registration Sys., Inc. v. Saunders, 2010 ME 79, 2 A.3d 287, ¶ 15 ("Without possession of or any interest in the note, MERS lacked standing to institute foreclosure proceedings and could not invoke the jurisdiction of our trial courts" [emphasis added]); RMS Residential Properties, L.L.C. v.Miller, 303 Conn. 224, 229, 232, 32 A.3d 309 (2011), quoting Hiland v. Ives, 28 Conn.Supp. 243, 245, 257 A.2d 822 (1966) (explaining that " '[s]__tanding is the legal right to set judicial machinery in motion' " and holding that the plaintiff had standing because it proved ownership of the note and mortgage at the time it commenced foreclosure action__); McLean v. JP

Morgan Chase Bank Natl. Assn., 79 So.3d 170, 173 (Fla.App.2012) ("the plaintiff must prove that it had standing to foreclose when the complaint was filed"); see also Burley v. Douglas, 26 So.3d 1013, 1019 (Miss.2009), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), fn. 5 (" 'standing is to be determined as of the commencement of suit' "); In re 2007 Administration of Appropriations of Water of the Niobrara, 278 Neb. 137, 145, 768 N.W.2d 420 (2009) ("only a party that has standing may invoke the jurisdiction of a court or tribunal. And the junior appropriators did not lose standing if they possessed it under the facts existing when they commenced the litigation" [footnote omitted]).

**8. An entity that fails to produce admissible evidence that it had suffered any injury at the time it commenced this foreclosure action necessarily fails to establish an interest in the note or mortgage at the time the entity files the suit thereby failing to show standing, the constitutionally required prerequisite to invoke the jurisdiction of the court.**

9. In Florida, Rules ___ of the Florida Rules of Civil Procedure governs the procedural requirement that a complaint be brought in the name of the real party in interest and provides:

10. The purpose behind the real party in interest rule is " '* * * to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter.' Celanese Corp. of America v. John Clark Industries (5 Cir.1954), 214 F.2d 551, 556."

11. As the Supreme Court explained in Lincoln Property Co. v. Roche, 546 U.S. 81, 90, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005), the real-party-in-interest rule concerns proper party joinder. Fedn. of Am. v.Upjohn Co., 346 A.2d 725, 729 (D.C.1975) (construing analogous District of Columbia rule).

12. The Florida procedural rules when read in para materia with the Florida Constitutional access to courts provision preclude a party with no personal stake in a controversy to file a claim on behalf of a third party, obtain the cause of action by assignment, and then have the assignment relate back to commencement of the action. See Progressive Ins. etc.

13. Florida courts cannot substitute a real party in interest for another party if no party with standing has invoked its jurisdiction in the first instance.

14. The Florida Constitution protection of court access and the Florida rules of procedure do not allow a litigant to cure the lack of standing after commencement of the action by obtaining an interest in the subject of the litigation and substituting itself as the real party in interest.

**15. The lack of standing at the commencement of a foreclosure action requires dismissal of the complaint.**

16. It is fundamental that a party commencing litigation must have standing to sue in order to present a justiciable controversy and invoke the jurisdiction of the court.

**<u>17. There is no statute or rule of procedure that changes this principle, and a lack of standing at the outset of litigation cannot be cured by receipt of an assignment of the claim or by substitution of the real party in interest.</u>**

18. Where it is undisputed that the foreclosing entity did not have standing at the time it commenced the subject foreclosure action, it failed to invoke the jurisdiction of the court. Accordingly, the cause must be dismissed. See also <u>Fed. Home Loan Mtge. Corp. v. Schwartzwald</u>, Slip Opinion No. 2012-Ohio-5017. Foreclosure—Jurisdictional aspects of standing—Civ.R. 17(A)—Jurisdiction determined as of time of filing suit. (Nos. 2011-1201 and 2011-1362—Submitted April 4, 2012—Decided October 31, 2012.) APPEAL from and CERTIFIED by the Court of Appeals for Greene County, No. 2010 CA 41, 194 Ohio App.3d 644, 2011-Ohio-2681.

2. Defendant US Bank, NA (US Bank) has failed to establish that it was the holder of the Note, and that it possessed the Note, when it instituted a non-judicial foreclosure against Plaintiff, the date of the foreclosure action on August 4, 2007. It did not acquire what appears to be a robo-signed Assignment, by a MERS Vice President, until August 21, 2008, one year after initiating a wrongful foreclosure action against Plaintiff, therefore dismissing and extinguishing "ALL" its non-judicial foreclosure actions against Plaintiff is proper. **Exhibits A. and B.**

**Mortgage assignments are now being filed with the following language:**

There is substantial evidence that mortgage servicing companies and their lawyers are continuing to file fraudulent mortgage assignments in county recorders offices throughout the country.

In April, 2011, the widespread abuses, including massive forgeries, were exposed in a 60 Minutes segment that focused on employees of

Docx, a subsidiary of Lender Processing Services, who forged the name "Linda Green" to mortgage assignments used in foreclosures. Several weeks later, Guilford County, NC County Recorder Jeff Thigpen came forward with a comprehensive study of the "Linda Green" forgeries in his county's records – finding over 2000 documents signed by Linda Green with 4 – 15 significant signature variations. County Recorder John O'Brien in Massachusetts and Curtis Hertel in Michigan conducted similar comprehensive studies with similar results.

In November, 2011, the Nevada Attorney General's office filed the first criminal charges against employees of Lender Processing Services for falsifying mortgage documents. An examination of recent filings by mortgage servicers shows that these companies are exacerbating the problem of fraudulent documents. "This Assignment is to supplement and ratify that certain Assignment of Mortgage recorded in Original Records Book 19467 at Page 1710 Original Records Book 19888 at Page 1466 of Hillsborough County, Florida." (Instrument #2011294512, Hillsborough County, Florida, filed September 12, 2011.) An examination of the "ratified" Assignment shows that it is one of the Linda Green forged documents. It is very similar to the Linda Green forged signature demonstrated by LPS employee Chris Pendley on the 60 Minutes segment. Instead of admissions that the documents are forgeries, the mortgage servicers are filing "ratifications." **These ratifications are signed by other employees of mortgage servicing companies, using titles of MERS officers. The information continues to be false.**

In the first "Linda Green" Assignment, the mortgage is reported to have been transferred on September 9, 2009. In the "ratified" version, the mortgage is reported to have been transferred on July 13, 2011. Both Assignments purport to transfer a mortgage made by American Brokers Conduit to a Bear Stearns trust (Bear Stearns ABS, Series 2006-3) that closed in 2006. U.S. Bank is the trustee for this trust. American Home Mortgage Servicing is the servicer. The first assignment was filed on September 16, 2009 – just two weeks before the date on the Lis Pendens (initial foreclosure filing) prepared by the foreclosure mill, Shapiro & Fishman, LLP. If the 2009 Assignment from MERS to the trust were valid, MERS would have had nothing to transfer in 2011. In Latin, this concept is stated: Nemo dat quod non habet. Translation: one cannot give what one does not have. The signers on the 2011 Assignment claim to be corporate officers of MERS, though they are not listed as such in the records of the Florida Secretary of State. (The 2011 Assignment was notarized in Duval County, FL.). These "ratification" filings are a good indication that the Consent Order entered by the FDIC and the OCC on April 13, 2011, are not being adequately monitored.

Why would any trust or mortgage servicer ratify conduct that has been described as criminal conduct by attorneys general? These filings are a wreck on a wreck. The Dallas County, Texas and Christian County, Kentucky have now filed lawsuits similar to suits filed by Curtis Hertel, Jr., the Ingham County Register of Deeds, and Oakland County Treasurer Andy Miesner in Michigan. The news comes from Bloomberg. The county said that through MERS, notes and mortgages are being "sold, assigned or transferred" without being recorded in county deed records. The defendants "misrepresented the true beneficial owner of notes and related mortgages filed by them in **Dallas County, Texas**, for the purpose of avoiding the recordation of subsequent transfer and payment of attendant filing fees."

3. Defendant US Bank, NA (US Bank) has failed to establish that it was the holder of the Note, and that it possessed the Note, when it instituted a non-judicial foreclosure against Plaintiff, the date of the foreclosure action on August 4, 2007. It did not acquire what appears to be a robo-signed Assignment, until August 21, 2008, therefore dismissing and extinguishing its non-judicial foreclosure actions against Plaintiff is proper. **Exhibits A and B.**

**The New York Court of Appeals in <ins>MERSCORP, Inc. v Romaine (8 NY3d 90</ins> [2006]), explained how MERS acts as the agent of mortgagees, holding at 96:**

In 1993, the MERS system was created by several large

participants in the real estate mortgage industry to track ownership

interests in residential mortgages. Mortgage lenders and other entities,

known as MERS members, subscribe to the MERS system and pay

annual fees for the electronic processing and tracking of ownership

and transfers of mortgages. Members contractually agree to appoint

MERS to act as their common agent on all mortgages they register

in the MERS system. [Emphasis added]

Thus, it is clear that MERS's relationship with its member lenders is that of agent with the lender-principal. This is a fiduciary relationship, resulting from the manifestation of consent by one person to another, allowing the other to act on his behalf, subject to his

control and consent. The principal is the one for whom action is to be taken, and the agent is the one who acts.It has been held that the agent, who has a fiduciary relationship with the principal, "is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority." (Maurillo v Park Slope U-Haul, 194 AD2d 142, 146 [2d Dept 1992]). "Agents are bound at all times to exercise the utmost good faith toward their principals. They must act in accordance with the highest and truest principles of morality." (Elco Shoe Mfrs. v Sisk, 260 NY 100, 103 [1932]). (See Sokoloff v Harriman Estates Development Corp., 96 NY 409 [2001]); Wechsler v Bowman, 285 NY 284 [1941]; Lamdin v Broadway Surface Advertising Corp., 272 NY 133 [1936]). An agent "is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." (Lamdin, at 136).

Thus, in the instant action, MERS, as nominee for INDYMAC, was INDYMAC'S agent [*8]for limited purposes. It only has those powers given to it and authorized by INDYMAC, its principal. Even if plaintiff INDYMAC FED existed and had jurisdiction, its counsel, FS & C, failed to submit documents authorizing MERS, as nominee for the then deceased INDYMAC, to assign the subject mortgage and note to the "living dead"

plaintiff, INDYMAC FED. MERS lacked authority to assign the MEISELS mortgage, making the assignment defective.

**The Appellate Division, Second Department in Bank of New York v Silverberg, (86**

**AD3d 274, 275 [2d Dept 2011]), confronted the issue of "whether a party has standing to**

commence a foreclosure action when that party's assignor—in this case, Mortgage Electronic Registration Systems, Inc. (hereinafter MERS)—was listed in the underlying mortgage instruments as a nominee and mortgagee for the purpose of recording, but was never the actual holder or assignee of the underlying notes." The Court held, at 275, "[w]e answer this question in the negative." MERS, in the Silverberg case and in the instant MEISELS' action, never had title or possession of the note. The Silverberg Court instructed, at 281-282:

the assignment of the notes was thus beyond MERS's authority as

8

nominee or agent of the lender (see Aurora Loan Servs., LLC v

Weisblum, AD3d, 2011 NY Slip Op 04184, *6-7 [2d Dept 2011];

HSBC Bank USA v Squitteri, 29 Misc 3d 1225 [A] [Sup Ct, Kings

County, F. Rivera, J.]; ; LNV Corp. v Madison Real Estate, LLC,

2010 NY Slip Op 33376 [U] [Sup Ct, New York County 2010,

York, J.]; LPP Mtge. Ltd. v Sabine Props., LLC, 2010 NY Slip Op

32367 [U] [Sup Ct, New York County 2010, Madden, J.]; Bank of

NY v Mulligan, 28 Misc 3d 1226 [A] [Sup Ct, Kings County 2010,

Schack, J.]; One West Bank, F.S.B., v Drayton, 29 Misc 3d 1021

[Sup Ct, Kings County 2010, Schack, J.]; Bank of NY v Alderazi,

28 Misc 3d 376, 379-380 [Sup Ct, Kings County 2010, Saitta, J.]

[the "party who claims to be the agent of another bears the burden

of proving the agency relationship by a preponderance of the evidence"];

HSBC Bank USA v Yeasmin, 24 Misc 3d 1239 [A] [Sup Ct, Kings

County 2010, Schack, J.]; HSBC Bank USA, N.A. v Vasquez, 24

Misc 3d 1239 [A], [Sup Ct, Kings County 2009, Schack, J.]; Bank of

NY v Trezza, 14 Misc 3d 1201 [A] [Sup Ct, Suffolk County 2006,

Mayer, J.]; La Salle Bank Natl. Assn. v Lamy, 12 Misc 3d 1191 [A]

[Sup Ct, Suffolk County, 2006, Burke, J.]; Matter of Agard, 444 BR [*9]

231 [Bankruptcy Court, ED NY 2011, Grossman, J.]; but see U.S.

Bank N.A. v Flynn, 27 Misc 3d 802 [Sup Ct, Suffolk County 2011,

Whelan, J.]).

**Moreover, the Silverberg Court concluded, at 283, "because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the . . . assignment of mortgage is a nullity, and MERS was without authority**

to assign the power to foreclose to the plaintiff. Consequently, the plaintiff failed to show that it had standing to foreclose." Further, Silverberg the Court observed, at 283, "the law must not yield to expediency and the convenience of lending institutions. Proper procedures must be followed to ensure the reliability of the chain of ownership, to secure the dependable transfer of property, and to assure the enforcement of the rules that govern real property [emphasis added]."

To further muddy the waters of the instant action, there is the issue of the March 30, 2011 assignment of the subject mortgage by Wendy Traxler, as attorney in fact for FDIC as Receiver for INDYMAC FED, more than two years after INDYMAC FED ceased to exist and the FDIC sold its assets to One West Bank, F.S.B. Even if the FDIC as Receiver could assign the subject mortgage, this assignment is defective because it lacks a power of attorney to Ms. Traxler. To have a proper assignment of a mortgage by an authorized agent, a power of attorney is necessary to demonstrate how the agent is vested with the authority to assign the mortgage. "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it [Emphasis added]." (Tawil v Finkelstein Bruckman Wohl Most & Rothman, 223 AD2d 52, 55 [1d Dept 1996]). (See Real Property Law § 254 (9); Suraleb, Inc. v International Trade Club, Inc., 13 AD3d 612 [2d Dept 2004]).

Further, preprinted at the bottom of both the defective Johnson-Seck and the defective Traxler assignments, under the notary public's jurat, is the same language, "When recorded mail to: Fein, Such and Crane, LLP, 28 East Main St. Ste.1800, Rochester, NY 14614."

10

Extraordinary circumstances warrant dismissal with prejudice

The chain of events in this action by the "living dead" plaintiff INDYMAC FED, with its failure to have personal jurisdiction, mandates dismissal of the instant action with prejudice. "A court's power to dismiss a complaint, sua sponte, is to be used sparingly and only when extraordinary circumstances exist to warrant dismissal." (U.S. Bank, N. A. v Emmanuel, 83 AD3d 1047, 1048 [2d Dept 2011]). The term "extraordinary circumstances" is defined as "[a] highly unusual set of facts that are not commonly associated with a particular thing or event." (Black's Law Dictionary 236 [7th ed 1999]).

It certainly is "a highly unusual set of facts" for a deceased plaintiff to not only commence an action and but to continue to prosecute the action. The events in the instant action are "not commonly associated with a" foreclosure action.

However, the Court is not precluding the correct owner of the subject MEISELS mortgage, whomever it might be, from commencing a new action, with a new index number, to foreclose on the MEISELS mortgage. The July 27, 2010 order of reference is vacated, pursuant to CPLR Rule 5015 (a) (4), for lack of jurisdiction by a non-existent plaintiff, INDYMAC FED. The Court's dismissal with prejudice is not on the merits of the action.

[*10]Cancellation of subject notice of pendency

The dismissal with prejudice of the instant foreclosure action requires the

cancellation of the notices of pendency. CPLR § 6501 provides that the filing of a notice

of pendency against a property is to give constructive notice to any purchaser of real property or encumbrancer against real property of an action that "would affect the title to, or the possession, use or enjoyment of real property, except in a summary proceeding brought to recover the possession of real property." The Court of Appeals, in 5308 Realty Corp. v O & Y Equity Corp. (64 NY2d 313, 319 [1984]), commented that "[t]he purpose of the doctrine was to assure that a court retained its ability to effect justice by preserving its power over the property, regardless of whether a purchaser had any notice of the pending suit," and, at 320, that "the statutory scheme permits a party to effectively retard the alienability of real property without any prior judicial review."

CPLR § 6514 (a) provides for the mandatory cancellation of a notice of pendency by:

The Court, upon motion of any person aggrieved and upon such

notice as it may require, shall direct any county clerk to cancel

a notice of pendency, if service of a summons has not been completed

within the time limited by section 6512; or if the action has been

settled, discontinued or abated; or if the time to appeal from a final

judgment against the plaintiff has expired; or if enforcement of a

final judgment against the plaintiff has not been stayed pursuant

to section 551. [emphasis added]

**The plain meaning of the word "abated," as used in CPLR § 6514 (a) is the ending of an action. "Abatement" is defined as "the act of eliminating or nullifying." (Black's Law Dictionary 3 [7th ed 1999]). "An action which has been abated is dead, and any further enforcement of the cause of action requires the bringing of a new action, provided that a cause of action remains (2A Carmody-Wait 2d § 11.1)." (Nastasi v Natassi, 26 AD3d 32, 40 [2d Dept 2005]).** Further, Nastasi at 36, held that the "[c]ancellation of a notice of pendency can be granted in the exercise of the inherent power of the court where its filing fails to comply with CPLR § 6501 (see 5303 Realty Corp. v O & Y Equity Corp., supra at 320-321; Rose v Montt Assets, 250 AD2d 451, 451-452 [1d Dept 1998]; Siegel, NY Prac § 336 [4th ed])." Thus, the dismissal of the instant complaint must result in the mandatory cancellation of the "living dead" plaintiff INDYMAC FED's notices of pendency against the property "in the exercise of the inherent power of the court."

## Possible frivolous conduct by plaintiff's counsel

**The commencement and continuation of the instant action by the "living dead" plaintiff INDYMAC FED, with its false statements of facts, the use of a robosigner and the disingenuous statements by Roger Stotts, Mr. Broyles and his firm, FS & C,**

appears to be frivolous. **22 NYCRR § 130-1.1 (a) states that "the Court, in its discretion may impose financial sanctions upon any party or attorney in a civil action or proceeding who engages in frivolous conduct as defined in this Part, which shall be payable as provided in section 130-1.3 of this Subpart." Further, it states in 22 NYCRR § 130-1.1 (b), that "sanctions may be imposed upon any attorney appearing in the action or upon a partnership, firm or corporation with which the attorney is associated."** [*11]

**22 NYCRR § 130-1.1 (c) states that:**

For purposes of this part, conduct is frivolous if:

(1) it is completely without merit in law and cannot be supported

   by a reasonable argument for an extension, modification or

   reversal of existing law;

(2) it is undertaken primarily to delay or prolong the resolution of

   the litigation, or to harass or maliciously injure another; or

(3) it asserts material factual statements that are false.

It is clear that the instant foreclosure action "is completely without merit in law" and "asserts material factual statements that are false." Further, Mr. Broyles' false and defective statements in the April 8, 2009 complaint and the June 2, 2009 certificate of conformity may be a cause for sanctions.

Several years before the drafting and implementation of the Part 130 Rules for

costs and sanctions, the Court of Appeals (A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 6 [1986]) observed that "frivolous litigation is so serious a problem affecting the

proper administration of justice, the courts may proscribe such conduct and impose sanctions in this exercise of their rule-making powers, in the absence of legislation to the contrary (see NY Const, art VI, § 30, Judiciary Law § 211 [1] [b] )."

Part 130 Rules were subsequently created, effective January 1, 1989, to give the

courts an additional remedy to deal with frivolous conduct. These stand beside Appellate

Division disciplinary case law against attorneys for abuse of process or malicious

prosecution. The Court, in Gordon v Marrone (202 AD2d 104, 110 [2d Dept 1994], lv

denied 84 NY2d 813 [1995]), instructed that:

Conduct is frivolous and can be sanctioned under the court rule if

"it is completely without merit . . . and cannot be supported by a

reasonable argument for an extension, modification or reversal of

existing law; or . . . it is undertaken primarily to delay or prolong

the resolution of the litigation, or to harass or maliciously injure

another" (22 NYCRR 130-1.1[c] [1], [2] . . . ).

In Levy v Carol Management Corporation (260 AD2d 27, 33 [1st Dept 1999]) the

Court stated that in determining if sanctions are appropriate the Court must look at the

broad pattern of conduct by the offending attorneys or parties. Further, "22 NYCRR

130-1.1 allows us to exercise our discretion to impose costs and sanctions on an errant
party . . ." Levy at 34, held that "[s]anctions are retributive, in that they punish past
conduct. They also are goal oriented, in that they are useful in deterring future frivolous
conduct not only by the particular parties, but also by the Bar at large."

The Court, in Kernisan, M.D. v Taylor (171 AD2d 869 [2d Dept 1991]), noted that

the intent of the Part 130 Rules "is to prevent the waste of judicial resources and to deter

vexatious litigation and dilatory or malicious litigation tactics (cf. Minister, Elders &

Deacons of Refm. Prot. Church of City of New York v 198 Broadway, 76 NY2d 411; see

Steiner v Bonhamer, 146 Misc 2d 10) [Emphasis added]." The instant action, with the

"living dead" plaintiff INDYMAC FED: lacking personal jurisdiction and standing; using

a robosigner; and, making false statements, is "a waste of judicial resources." This

conduct, as noted in Levy, must be deterred. [*12]In Weinstock v Weinstock (253 AD2d

873 [2d Dept 1998]) the Court ordered the maximum sanction of $10,000.00 for an attorney who pursued an appeal "completely without merit," and holding, at 874, that "[w]e therefore award the maximum authorized amount as a sanction for this conduct (see, 22 NYCRR 130-1.1) calling to mind that frivolous litigation causes a substantial waste of judicial resources to the detriment of those litigants who come to the Court with real grievances [Emphasis added]." Citing Weinstock, the Appellate Division, Second Department, in Bernadette Panzella, P.C. v De Santis (36 AD3d 734 [2d Dept 2007]) affirmed a Supreme Court, Richmond County $2,500.00 sanction, at 736, as "appropriate in view of the plaintiff's waste of judicial resources [Emphasis added]."

In Navin v Mosquera (30 AD3d 883 [3d Dept 2006]) the Court instructed that when considering if specific conduct is sanctionable as frivolous, "courts are required to

examine whether or not the conduct was continued when its lack of legal or factual basis was apparent [or] should have been apparent' (22 NYCRR 130-1.1 [c])." The Court, in Sakow ex rel. Columbia Bagel, Inc. v Columbia Bagel, Inc. (6 Misc 3d 939, 943 [Sup Ct,

New York County 2004]), held that "[i]n assessing whether to award sanctions, the Court must consider whether the attorney adhered to the standards of a reasonable attorney (Principe v Assay Partners, 154 Misc 2d 702 [Sup Ct, NY County 1992])." In the instant action, counsel for the "living dead" plaintiff INDYMAC FED, Mr. Broyles and his firm, FS & C, bear a measure of responsibility for commencing and proceeding with an action on behalf of a non-existent plaintiff.

Therefore, the Court will examine the conduct of counsel for the "living dead" plaintiff INDYMAC FED, in a hearing, pursuant to 22 NYCRR § 130-1.1, to determine if plaintiff's counsel Mark K, Broyles, Esq. and his firm, Fein Such & Crane, LLP, engaged in frivolous conduct, and to allow Mark K. Broyles, Esq. and his firm, Fein, Such & Crane, LLP, a reasonable opportunity to be heard.

**Conclusion**

**Accordingly, it is**

**ORDERED, that the motion of defendant MENDEL MEISELS to vacate the July 27, 2010 order of reference, pursuant to CPLR Rule 5015 (a) (4), for the**

premises located at 2062 61st Street, Brooklyn, New York (Block 5528, Lot 33, County of Kings), for lack of personal jurisdiction by plaintiff INDYMAC FEDERAL BANK, FSB, is granted; and it is further

ORDERED, that because plaintiff INDYMAC FEDERAL BANK, FSB ceased to exist prior to the commencement of the instant action, the instant complaint, Index No. 8752/09 is dismissed with prejudice; and it is further

ORDERED, that the notices of pendency filed with the Kings County Clerk on April 9, 2009 and March 9, 2012, by plaintiff, INDYMAC FEDERAL BANK, FSB, in an action to foreclose a mortgage for real property located at 2062 61st Street, Brooklyn, New York (Block 5528, Lot 33, County of Kings), is cancelled and discharged; and it is further

ORDERED, that it appearing that counsel for plaintiff INDYMAC FEDERAL BANK, FSB, Mark K. Broyles, Esq. and his firm, Fein, Such & Crane, LLP engaged in "frivolous conduct," as defined in the Rules of the Chief Administrator, 22 NYCRR

§ 130-1 (c), and that pursuant to the Rules of the Chief Administrator, 22 NYCRR [*13]

§ 130.1.1 (d), "[a]n award of costs or the imposition of sanctions may be made . . . upon the court's own initiative, after a reasonable opportunity to be heard," this Court will conduct a hearing affording: plaintiff's counsel Mark K. Broyles, Esq.; and, his firm, Fein, Such & Crane, LLP; "a reasonable opportunity to be heard" before me in Part 27, on Monday, November 5, 2012, at 2:30 P.M., in Room 479, 360 Adams Street, Brooklyn, NY 11201; and it is further

ORDERED, that Ronald David Bratt, Esq., my Principal Law Clerk, is directed to serve this order by first-class mail, upon: Mark K. Broyles, Esq., Fein, Such & Crane, LLP, 28 East Main Street, Suite 1800, Rochester, New York 14614; and, Fein, Such & Crane, LLP, 28 East Main Street, Suite 1800, Rochester, New York 14614.

**This constitutes the Decision and Order of the Court.**

**ENTER**

_____

**HON. ARTHUR M. SCHACKJ. S. C.**

## RESCISSION

4. Plaintiff notified the broker, Defendant US Bank, NA, and Defendant lender Wilmington Finance, within 30 days, after the purported closing on the loan on February 9, 2006, of her desire to rescind, on March 2, 2006, within 30 days. Exhibit H.

5. Plaintiff told Defendants she would only pay them back the cash she received and on the first three payment statements to the Defendant US Bank, NA, Plaintiff wrote CANCEL, but Defendants ignored your Plaintiff, and refused to acknowledge that your Plaintiff was the one making the loan.

6. The Defendants changed the terms of the loan after the closing, but never notified Plaintiff regarding the changes. Plaintiff noticed the change in the terms of the agreement on or about February 15, 2006, when she received an introductory letter from Defendant US Bank, NA claiming it was the new lender, which was false and misleading.

7. Plaintiff did not agree to the change Defendant lender Wilmington Finance made to the terms of the refinance mortgage loan, from an adjustable to a fixed rate, nor knew anything about the changes until on or February 15, 2013, within 7 to 10 days after the purported closing on February 9, 2006. Plaintiff had not agreed or promised to pay the Defendants the new terms of the loan, nor knew anything about the changes the

17

Defendant lender Wilmington Finance took upon itself to make changes to the terms of the mortgage loan after closing on February 9, 2006.

**FRAUD**

8. Plaintiff never agreed to or promised to pay the new terms. If Plaintiff had known in advance she would have never signed the closing documents. Plaintiff did not agree to be in a worse situation than she was. Defendant Wilmington Finance took the unverified position that it could change the terms and that Plaintiff would accept the news terms, she did not.

9. Plaintiff did not accept the new loan terms on February 9, 2006, the purported closing date, nor does Plaintiff accept the terms now, therefore the Note is void, at the time of the foreclosure, Defendants violated Plaintiffs' rights, and she is entitled to judgment in her favor, quiet title, and any other remedy the Court deems fair and proper.

WHEREFORE because of Defendants wrongful foreclosure action against Plaintiff, suffered sore as a result of the Defendants' wrongful violations of her rights. Plaintiff was stressed, not able to work and loss wages, and she also suffered mental anguish over Defendants wrongful foreclosure of her home violated her rights, and is entitled to damages, and judgment in her favor against the Defendant banks, and any other remedy the Court deems fair and proper.

**PERMANENT INJUNCTION**

10. This lawsuit also seeks a court order preventing the Defendants from filing anything in deed records that identified MERS or anyone as a beneficiary who does not have an interest in the secured note. Defendant US Bank, NA (US Bank) "knew or should have known" that it lacked standing to foreclose on Plaintiff without an Assignment, and that the MERS system would cause improper filing.

11. Plaintiff seeks compensatory and punitive damages and an injunction ordering Defendants "to immediately cease their foreclosure practices against Plaintiff, and of nonrecording of assignments of mortgages."

12. Defendant US Bank, NA (US Bank) has failed to establish that it was the holder of the Note, and that it possessed the Note, when it instituted a wrongful non-judicial foreclosure action against Plaintiff, on August 4, 2007. The Defendants did not acquire what appears to be a robo-signed Assignment, until August 21, 2008, signed by the VP of Mers, (MERS has no employees) who is not even an entity.

13. However, Plaintiff gave notice, and filed this her Complaint against the Defendants for wrongful foreclosure, in Janary, 2008, thereby establishing this her dispute of the debt months before the Defendants acquired the purported Assignment, on August 21, 2008, therefore dismissing and extinguishing its non-judicial foreclosure actions against Plaintiff is proper.

**In Reese v. Provident Funding Associates, LLP, 2012 WL 2849700 (July 12, 2012) the Georgia Court of Appeals reversed a trial court's decision that it was permissible for a loan servicer to send a notice naming it as the holder of a security deed instead of the actual owner of the security deed, over three dissenting judges.** The result was that the homeowner won a suit for wrongful foreclosure against the loan servicer, and a route to wrongful foreclosure claims has been opened for plaintiffs. This is a huge case because this mortgage was one of the Mortgage Electronic Registration Systems, Inc. ("MERS") deals designed to avoid County taxes. MERS was named in the security deed as the grantee of the original security deed. After Provident funded the loan it sold and delivered the note to the Residential Funding Company, LLC ("RFC"). Thus, RFC succeeded Provident as the holder of the note, but Provident remained in place as the loan servicer only. It is likely that RFC sold the note as well and it became part of a package of mortgages that were bundled together and made into securities to be sold to investors like so many residential mortgages were handled before the Great Recession.

In 2009 the Reese's defaulted and eventually Provident sent notice to them that the property was going to go into foreclosure in a non-judicial sale. The foreclosure took place and the occupants of the home were evicted. The Reeses filed a claim for wrongful foreclosure claiming that OCGA 44-14-162.2(a) required their foreclosure notice to provide the name of the secured creditor, not just an agent of the creditor, ie, the loan servicer. The statute in question states clearly that "notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed or

19

other lien contract shall be given by the secured creditor no later than 30 days before the date of the proposed foreclosure." The provision then goes on to say that the notice must provide contact information of "the individual or entity who shall have full authority to negotiate, amend and modify all terms of the mortgage with the debtor." The statute arguably is ambiguous to situations where the secured creditor is not the only entity with full authority to do what the second sentence requires. The plaintiff's claimed that the provision as a whole makes clear the secured creditor must be named, perhaps along with the other agent with the authority to modify or amend the note. The defense argued that the second sentence clarifies that an agent, here Provident, is permitted to be the sole entity on the notice because it has the authority to act as much as the secured creditor. In essence, the plaintiff's focused on the first sentence and the defendant's on the second sentence. This was an issue of first impression to the Court of Appeals.

This is an important question because at least tens of thousands of mortgages in Georgia are handled the way this one was, with some entity other than the ultimate secured creditor listed on the notice. In fact in this case it is unclear just who the secured creditor was, but it is highly unlikely it was still RFC. It is impossible to tell how many mortgages and foreclosures in Georgia were handled this way. Nevertheless, despite the huge problem of wrongful foreclosures in the past, and current mortgages under water that were executed like this one, the court reversed the trial court's decision. It held that the two provisions in 44-14-162.2(a), read together, provide in plain language that the secured creditor must be named in the notice, and that nothing precludes the secured creditor from being listed alongside the servicer or other nominee.

Indeed, this notice listed Provident as the secured creditor, which simply was not true. The court duly noted this total misrepresentation and falsehood in its ruling. It seemed that the court found that construing the statute the way the banks do it leads to an automatic lie to the debtor that the servicer is in fact the secured creditor. This obviously was a troubling fact for the court in the case.

This ruling throws into question the ability to foreclose many real estate mortgages on the books and may cause many wrongful foreclosure suits over foreclosures that have already happened. The fact is that it might be very difficult for the servicer of a mortgage note to trace back the loan all the way to its ultimate security deed holder. Having to do this investigation will inevitably lead to transaction costs in time and money for the banks trying to untangle the complicated web of the mortgage securities that were traded all over the world. However, this is the world the industry created by inventing MERS and RFC in the first place to allow mortgages to be flipped endlessly and lightning fast without paying

County recording taxes at all for each transfer. The rush for money that created the securities investments out of residential mortgages led to this brazen attempt to circumvent taxes and the notice requirements of the statute. It remains to be seen how big this decision is in the long run, or whether the Georgia Supreme Court will look at the issue any time soon. But for now, it will allow defaulted debtors to stay in their homes longer, because it will force mortgage servicers to do a lot more homework up front about who actually holds the security deed on the loan that was funded to finance the house. All in all, it was a gutsy decision by the Court of Appeals, but one that seems obvious based on the reading the statute as a whole, as the court must in following the rules of contract interpretation in Georgia law.


**WHEREFORE** because of the Defendants' wrongful foreclosure action against Plaintiff, violating her rights; acting without an assignment, nor did they own the Note, your Plaintiff is entitled to damages. Defendants knew or should have known they lacked standing; that they did not own the Note; they did not have an Assignment; nor did they have authority to foreclose on Plaintiff, violated her rights, therefore she is entitled to judgment in her favor, damages, and any other remedy the Court deems fair and proper.

November 6, 2012

Respectfully Submitted by: _____

Grace Adams